IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MARTHA GAIL POORE**                                                                      **PLAINTIFF**

**v.**                                                             **CIVIL ACTION NO. 2:22-cv-49-TBM-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                     **DEFENDANT**

**REPORT AND RECOMMENDATION**

Plaintiff Martha Gail Poore brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

**PROCEDURAL HISTORY**

On March 15, 2019, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that she has been disabled since August 31, 2015, due to anxiety, depression, degenerative disc disease, ulcers, bursitis in her right hip, migraine headaches, high blood pressure, and restless leg syndrome. (Administrative Record [8] at 111; 181-89). The agency determined that Plaintiff was disabled as of January 21, 2020, but not before. ([8] at 127-28). Unsatisfied with this determination, Plaintiff appealed, arguing that she was disabled prior to January 21, 2020. ([8] at 141). An Administrative Law Judge ("ALJ") conducted a hearing, and on July 28, 2021, the ALJ issued a decision finding that Plaintiff was not disabled prior to January 21, 2020. ([8] at 31-47). Plaintiff then appealed the ALJ's decision to the Appeals Council. On February 17, 2022, the Appeals Council denied Plaintiff's request for review,

rendering the ALJ's decision the final decision of the Commissioner ([8] at 5-8). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his July 28, 2021, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled prior to January 21, 2020. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 31, 2015, the alleged disability onset date. At step two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, a depressive disorder, and a post-traumatic stress disorder. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([8] at 34).

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The ALJ then examined the record and determined that during the relevant period Plaintiff had the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. 404.1567(b),[3] with the following exceptions:

> no climbing of ladders, ropes or scaffolds, occasional climbing of ramps or stairs, occasional balancing, stooping, crouching, kneeling and crawling, no work around dangerous moving machinery or at unprotected heights and occasional interaction with the public, coworkers and supervisors.

([8] at 37).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. Accordingly, the ALJ determined that Plaintiff was not disabled prior to January 20, 2020. ([8] at 45-46).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b).

*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*.

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff, proceeding pro se, filed a Memorandum Brief [18] challenging the ALJ's decision. It appears that Plaintiff is challenging the ALJ's finding at step three that Plaintiff's impairments did not meet a listing and more generally challenging the ALJ's finding that she was not disabled prior to January 21, 2020.[4]

---

[4] Plaintiff also states that she disagrees with the ALJ's findings at "Page 29 Paragraph 3," but this paragraph does not contain any findings. Instead, it is an explanation of step four of the sequential analysis, which requires an ALJ to consider whether a claimant is able to perform his or her past relevant work. Moreover, the ALJ found that Plaintiff was *unable* to perform any past relevant work. ([8] at 45).

**Listing 1.15**

At step three, Plaintiff has the burden of establishing that her impairment meets or equals the criteria in the listings. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The burden of proof to meet a listing is "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff contends that the ALJ erred by finding that she did not have an impairment or combination of impairments that met Listing 1.15, which relates to disorders of the spine.

To meet Listing 1.15, a claimant must show:

Disorders of the skeletal spine resulting in compromise of a nerve root(s), documented by A, B, C, *and* D:

A. Neuro-anatomic (radicular) distribution of one or more of the following *symptoms* consistent with compromise of the affected nerve root(s):

   1. Pain; or
   2. Paresthesia; or
   3. Muscle fatigue.

AND

B. Radicular distribution of neurological *signs* present during physical examination or on a diagnostic test and evidenced by 1, 2, and either 3 or 4:

   1. Muscle weakness; and
   2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root
   3. Sensory changes evidenced by:
      a. Decreased sensation; or
      b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; *or*
   4. Decreased deep tendon reflexes.

AND

C. Findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

>   AND
>
>   D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least *one* of the following:
>
>   1. A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or
>   2. An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, *and* a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or
>   3. An inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15 (internal citations omitted).

Here, the ALJ concluded that Plaintiff's impairments did not reach the level of severity required to meet or equal Listing 1.15. The ALJ noted that "no acceptable medial source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment." ([8] at 34). The ALJ also found that there was no documented medical need for an assistive device for the relevant period—August 31, 2015 to January 21, 2020. ([8] at 34-35).

For her part, Plaintiff argues that she "had used a cane off and on for a few years." ([18] at 2). The ALJ noted Plaintiff's hearing testimony that she had been using a cane for years and noted her use of a cane during a medical consultative examination on March 9, 2020. But, the ALJ found no evidence that Plaintiff needed or used a cane prior to January 21, 2020. ([8] at 40). The record supports the ALJ's finding that an assistive device was not medically necessary during the relevant period.

As noted by the ALJ, on June 24, 2016, Plaintiff reported to her healthcare provider that she hurt her back when she stepped in a hole while mowing her yard. ([8] at 40; 599). On December 4, 2017, Plaintiff's doctor noted a normal nerve conduction study. ([8] at 40; 345). Medical records throughout 2017, 2018, and 2019 reveal that Plaintiff ambulated down the hall with a slow, steady, non-antalgic gait. ([8] at 40; 528; 534; 544; 557; 568; 573; 577; 754; 758). A medical record from September 11, 2017, reveals that Plaintiff was able to walk on her toes and heels without difficulty. ([8] at 40; 577). Doctor's notes from April 20 and May 4, 2018, indicate that Plaintiff had no gait problems. ([8] at 40; 551; 561). During an orthopedic exam on February 27, 2019, the doctor noted that Plaintiff was negative for gait problems. ([8] at 40; 524). The ALJ found that during the relevant period, "there was no mention of the claimant using a cane." ([8] at 40).

Plaintiff submitted additional medical records along with her Memorandum Brief [18]. ([18-2]). New evidence justifies remand only if it is material. *See Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003). Evidence is material if (1) it relates to the time period for which the disability benefits were denied and (2) there is a reasonable possibility that it would have changed the outcome of the disability determination. *Id*. Concerning the ALJ's finding at step three, the medical records submitted to the Court are not material. These records simply document visits with medical providers from June 29, 2017 to September 27, 2021, and mention that Plaintiff was examined for issues such as degenerative disc disease; tingling, numbness, and weakness in her legs; back pain; and meralgia paresthetica. ([18-2]). They do not demonstrate that an assistive device was medically necessary during the relevant period.

The listing requires a documented medical need for an assistive device. Plaintiff, however, identifies no medical records establishing her need for an assistive device during the

relevant period.  Plaintiff offers only her testimony that she used a cane, which does not satisfy the listing.  *See Delgadillo v. Colvin*, 2013 WL 5278495, at *9-10 (W.D. Tex. Sept. 17, 2013) ("the regulations require objective medical documentation apart from a claimant's subjective complaints in order to support the use of a cane").  Plaintiff has failed to establish that no credible evidence supports the ALJ's decision.  Given the evidence of record, substantial evidence supports the ALJ's determination at step three.

**Disability Onset Date**

The Social Security Administration determined that Plaintiff was disabled as of January 21, 2020. ([8] at 127-28).  Plaintiff asserts that she has been disabled since August 31, 2015.  The ALJ disagreed with Plaintiff and determined that she was not disabled prior to January 21, 2020.  The ALJ found that Plaintiff had severe physical and mental impairments but maintained, during the relevant period, the ability to perform light work with the following exertional limitations: "no climbing of ladders, ropes or scaffolds, occasional climbing of ramps or stairs, occasional balancing, stooping, crouching, kneeling and crawling, no work around dangerous moving machinery or at unprotected heights and occasional interaction with the public, coworkers and supervisors." ([8] at 37).

An ALJ has a duty to develop the record before him and must make an RFC assessment that is supported by substantial evidence.  The claimant, however, bears the burden of demonstrating that the ALJ's determination is not supported by substantial evidence. *Audler v. Astrue*, 501 F.3 446, 448 (5th Cir. 2007).  As previously mentioned, "[s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames*, 707 F.2d at 164.

*Physical Impairments*

In determining Plaintiff's RFC, the ALJ considered opinion evidence, subjective complaints, medical records, and activities of daily living. The ALJ found that Plaintiff had a history of degenerative disc disease but determined that there was no objective medical evidence establishing disabling symptoms and limitations during the relevant time period.

The ALJ thoroughly reviewed Plaintiff's medical records and noted findings such as tenderness, decreased range of motion, pain, and weakness, but determined that the medical findings were generally unremarkable. ([8] at 39). Dr. Barbara Barnard examined Plaintiff twice, once in 2014 and another time in 2017. Dr. Barnard noted Plaintiff's degenerative disc disease and pain in her back, leg, and neck, but she also noted Plaintiff's unremarkable physical findings, including her normal range of motion, normal gait, and full strength in all major muscle groups. ([8] at 38-39; 581-82; 601-02). The ALJ noted an x-ray of Plaintiff's spine taken on June 2, 2017, which revealed "very mild degenerative changes of the lower lumbar spine." ([8] at 39; 687). The ALJ also noted an MRI from June of 2017 showing mild disc bulging, minimal impingement, and no serious stenosis. ([8] at 39; 686). An MRI of Plaintiff's cervical spine taken on October 16, 2017, revealed only slight prominence at C6-7, but no significant bulge, protrusion, or stenosis. ([8] at 39; 430). An x-ray from that time revealed degenerative changes at C6-7, but the changes were not noted to be serious in degree. ([8] at 39; 431). On December 4, 2017, Plaintiff's doctor noted a normal nerve conduction study. ([8] at 40; 345). The ALJ then noted an x-ray from February 15, 2019, showing only mild spondylosis of the mid and lower lumbar spine. ([8] at 39; 609). An MRI three days later revealed mild degenerative changes with mild disc bulge and no stenosis or acute abnormalities. ([8] at 39; 608).

The ALJ considered the Disability Determination Services ("DDS") consultant physicians' findings that Plaintiff could perform light work. ([8] at 69-78). The ALJ also considered Plaintiff's activities of daily living. The ALJ noted that in 2019, Plaintiff did not have problems with selfcare except as limited by motivation. ([8] at 42; 226). Plaintiff cooked, cleaned, did laundry, ironed clothes, and sprayed weeds. ([8] at 42; 227). She drove and shopped once or twice a week. ([8] at 42; 228). She also went camping and fishing. ([8] at 42; 229).

As previously mentioned, Plaintiff submitted additional medical records to the Court. The health issues mentioned in the records (degenerative disc disease; tingling, numbness, and weakness in her legs; back pain; and meralgia paresthetica) were addressed in the medical records reviewed by the ALJ. These new records do not demonstrate that Plaintiff had disabling limitations or otherwise create a reasonable possibility that the outcome of the disability determination would have changed. Thus, the new medical records submitted to the Court are not material.

Plaintiff has failed to show that no credible evidence supports the Commissioner's determination. The ALJ found that the evidence of record (including Plaintiff's daily activities) was more persuasive than Plaintiff's subjective complaints, a determination within the purview of the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence."). The law is clear: conflicts in the evidence are to be resolved by the ALJ, not the courts. *Selders*, 914 F.2d at 617. The ALJ gave sufficient reasons for his findings, and substantial evidence supports the ALJ's RFC assessment and his finding that Plaintiff was not disabled prior to January 21, 2020.

*Mental Impairments*

  The ALJ also considered Plaintiff's mental impairments by reviewing opinion evidence, subjective complaints, medical records, and activities of daily living. The ALJ found that Plaintiff had a history of depressive disorder and post-traumatic stress disorder but determined that there was no objective medical evidence from any treating source establishing a history of serious, chronic psychological difficulties.

  The ALJ reviewed the mental health medications Plaintiff took at different times during the relevant time period, including Klonopin, Celexa, Vistaril, and Elavil. ([8] at 40-41). The ALJ noted that Plaintiff did not often schedule appointments with mental health professionals but generally sought refills of her medications via telephone requests. ([8] at 41). The ALJ also noted that when Plaintiff did visit with mental health professionals, the psychiatric findings were generally normal. ([8] at 41). For example, on June 29, 2017, a nurse practitioner noted that Plaintiff appeared anxious and agitated about not getting more pain medication but had normal cognition, memory, speech, judgment, and thought control. ([8] at 584). Similar psychiatric findings were made at other times. ([8] at 566; 580; 595).

  The ALJ considered Dr. Gustave Sison's October 3, 2019, mental evaluation of Plaintiff. Dr. Sison determined that although Plaintiff had a poor ability to interact appropriately with coworkers, she had a fair to good ability to understand, remember, and carry out instructions, a fair ability to perform routine, repetitive tasks, a fair ability to respond appropriately to supervision, and a fair to good ability to maintain attention and concentration to function consistently. ([8] at 41; 777). The ALJ found this opinion persuasive but discounted the finding that she had a poor ability to interact with others. The ALJ determined that Plaintiff's ability to shop, spend time with others, and engage in other activities did not support a finding of poor

11

ability to interact with coworkers. ([8] at 44).  Instead, the ALJ found that Plaintiff had moderate limitations in interacting with others and included in the RFC the limitation of occasional interaction with the public, coworkers and supervisors. ([8] at 35; 37).

The ALJ considered the DDS consultant psychologists' findings that Plaintiff had moderate limitations in interacting with others; no limitations with understanding, remembering, or applying information; no limitations in understanding, persisting, or maintaining pace; and mild limitations with adapting or managing oneself. ([8] at 44; 73).  The also ALJ considered Plaintiff's ability to provide information about her health, describe her prior work history, follow instructions for healthcare providers, comply with treatment, and respond to questions from medical providers. ([8] at 35).  The ALJ noted that doctors prescribed her narcotic medications without precautions, signaling their confidence in her ability to understand and follow instructions. ([8] at 35).  He noted Plaintiff's ability to drive, prepare meals, and manage funds, including paying bills and handling bank accounts. ([8] at 35).

The newly submitted medical records relevant to Plaintiff's mental health are not material.  Plaintiff submitted records from June 29, 2017, and March 6, 2019, noting that a nurse practitioner saw her for complaints of anxiety. ([18-2] at 1; 7).  Anxiety was addressed in the medical records reviewed by the ALJ, and nothing in the new records establishes that Plaintiff had disabling limitations.  Plaintiff also submitted a record from September 27, 2021—more than twenty months after the relevant time period—noting Plaintiff's complaints that she was "losing it" and that her issues had been ongoing for about four years. ([18-2] at 5).  The treating medical professional did not confirm that any serious issues had been ongoing for years or that Plaintiff suffered a disabling psychological issue during the relevant time period.  Thus, the new medical records submitted to the Court are not material.

The ALJ gave sufficient reasons for his findings concerning Plaintiff's mental limitations, and substantial evidence supports the ALJ's RFC assessment and his finding that Plaintiff was not disabled prior to January 21, 2020.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 18th day of April, 2023.

s/ Michael T. Parker<br>United States Magistrate Judge